Thank you, Your Honor. May it please the court, I will keep track of my time. I would like to save a few minutes for a rebuttal. Your Honors, everybody involved in the training options asset sale understood that Cabrera retained an account with Google and the claims against Google. That has serious ramifications for this appeal. And is this possible? The first thing it means is that Cabrera never intended to rely on any of the information in PIN affidavit or to call PIN as a witness or the ratification documents because he never thought it would be necessary. That means there was no duty to disclose them under Rule 26a because the disclosure duty under Rule 26a is limited to documents and witnesses you intend to rely on. This is the 2000 Advisory Committee note to Rule 26a because the rule was narrowed that year. A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does intend to use. No disclosure duty under Rule 26a means that no sanctions under Rule 37c1 could issue because the only nondisclosure that a 37c1 sanction can be imposed for is a nondisclosure under Rule 26a, which is the initial disclosures or 26e, which is not relevant because they never requested the documents. Our case can be summarized in four sentences, and that on the discovery side is first, there is no duty to produce documents you don't intend to rely on. That's Rule 26a. There is no duty to produce documents that are not requested, and Google did not request the documents it complains about until it was too late under discovery. There is no duty to produce documents that do not exist, and there's no duty to create documents for discovery. Now, the second... Mr. Joseph, what about your duty under Rule 26e to supplement, to make supplemental disclosures if, you know, you find your initial disclosures were incomplete or not on point and facts change, and what about that duty? Your Honor, you're 100% correct. Once you intend to rely on documents or evidence, you must disclose it. It was not until Google's 12b1 motion, which allows for the introduction of affidavits, that Peen became material. His affidavit was immediately disclosed. It was immediately obtained and disclosed. There was no intent prior to that time to be relying on Peen, and that was an immediate disclosure. That didn't happen until they filed their motion on November 13, 2018, and Peen's affidavit was promptly disclosed in response to that, and that's why there was no duty to make this disclosure, and absent the disclosure duty, there was no warrant for a 37c1 sanction, and there could be no bad faith in not disclosing the asset sale by a witness who understood that the asset sale was irrelevant to him. It was his account. This is a layperson. It's his account. It's his claims. He didn't transfer any of his personal assets when the training options assets were sold. He didn't understand that this was a training options asset. He was never asked at his deposition if this was a training options asset, but I need to correct a critical misstatement that goes to the sanctions issue also that appears 11 times in Google's brief, and that is the claim, and it first appears at page three that Cabrera opposed the subpoenas on the ground that the buyers had no relevant information. That is demonstrably false. If you look at the magistrate judge's ruling at page 196 of the she found that Cabrera was not contesting relevance. She said, well, Google didn't provide me with the subpoena. I can't assess relevance, and this is a quote. However, Mr. Cabrera does not appear to object to the subpoenas on this ground. The issue then is whether there is good cause for Google to seek discovery that cannot be completed before the discovery cutoff date, and then she said, where have you been, Google? When Cabrera appeared in March, he offered to sit for a deposition within 30 days. That's docket entry 286, page two. Discovery was open until May 31, two and a half months. They did nothing. They waited for months before they sought any discovery, and it was time to be complied with. That judge only rejected these subpoenas on the ground that they were untimely under rule 37-3 of the local rules, which say you can't serve discovery or subpoenas or seek discovery. That is going to come due after the discovery cutoff date, and that was the ground on which it was opposed, not relevance. Relevance, the court, and this was affirmed by the district judge, found to be conceded, but this is the linchpin of Google's judicial estoppel argument. It's a linchpin of their argument on rule 37 for bad faith, and it's a linchpin of their argument against the supplemental pleading, and the district judge's footnote on judicial estoppel, and it's only a footnote, does not even analyze the factors for judicial estoppel. It just says, I rely on Google's brief at pages nine and ten, and if you look at that brief, which is docket entry 505 at page nine, the critical allegation is exactly the same false statement. This is what Google wrote. First, plaintiffs succeeded in persuading the magistrate judge in this court that AMP and PIN did not have relevant evidence on Cabrera's standing. That is exactly the opposite of what the record shows, and Google has not appealed that order or the district judge's affirmance of that. The fact that everybody understood that Cabrera had these claims also means that if the court were to find that there was a mistake and that AMP should have ratified and provided the claims to Cabrera first, or should be the plaintiff, that was an understandable mistake. That's been rectified under rule 17A3, and that was mandatory that the district judge permit the rectification under rule 17A3 for a mistake. Now, the fact that all parties understood the agreement, their agreement of saying that these claims did not transfer, means that that's what the section 201 of the restatement, subdivision one, if the parties agree on what the terms are and what the meaning is, that's the meaning. But Google says, no, as a third party to this contract, it reads a form contract, a form contract, the APA, as being unambiguous. And it says you can't have parole evidence. Well, your honors, if both parties to the contract say there's a mistake, then Florida law allows parole evidence for that mistake or to clarify that was clearly a latent ambiguity. And I'd also say the fact that everybody understood Cabrera had the claims means that at all times Cabrera was going to get the recovery allocable to training options. That is a real stake in the case, but he also had Article III standing for two other reasons. First, as a 50% owner with the owner, with his wife of a closely held corporation. And the Supreme Court said in the Franchise Tax Board that a parent of a wholly owned sub has Article III standing for harm to the sub. And the sub may be the proper party, but Article III standing is satisfied. And both the Fifth Circuit in Ensley and the DC Circuit in Wheeland have Justice Ginsburg was on the panel. So was Justice Thomas, but he ascended to the Supreme Court before the decision was made. Cabrera also had Article III standing because he was the party to the agreement that Google breached. And the district judge has found in two dismissal orders and a summary judgment order that Google did breach this agreement in material ways. Obviously, Google will have its day in court, but Cabrera should be entitled to his day in court. The violation of a contractual duty is a legally redressable harm, independent of damages. But California law in section 3360 of the civil code confers nominal damages. And in the Van case about six weeks ago, this court case in which Judge Christian was on the panel said, doesn't matter how small the damages are, a dollar is enough. That's Article III standing. And in the Lindsay case, this court held that whether or not there's a right to recover under the contract is a matter of state law. That's a rule 17 issue. It's not Article III standing. And in the case I belatedly sent yesterday from the Second Circuit, which relies on Lindsay, the court rejected exactly the same argument that Google is making here, that you have to look at contractual standing to determine Article III standing. That is the opposite of what you have to do. Article III standing is separate and independent. State law determines a section, a rule 17 issue. Mr. Joseph, can you turn for a minute to, didn't you make a, did you make a motion to supplement your complaint? Yes. Yes. I definitely want to turn to the Rule 15D issue. Thank you. All right. Would you turn to that? I'd like to hear your position on that. Yes, Your Honor. This court held in Northstar that it's permissible to use Rule 15D to provide standing through an assignment if you don't have it at the beginning of the case. This is a much stronger case than Northstar because the court always had jurisdiction over this case because Woods was always a plaintiff. So this is not a case, Mike Northstar, where the subsequent amendment would revive a case over which there was no jurisdiction. Here there's a case where there was jurisdiction at all times because Woods didn't settle until his reconsideration motion was denied together with Cabrera's reconsideration motion. It was simply to get jurisdiction over an additional plaintiff. There's no prejudice. They claim evidence was withheld. You can't withhold evidence that is not requested and that you don't intend to rely on. There is no duty to disclose it. There also is no meaningful discovery that's left. Substantive discovery is done. They say, they want to take a look at whether AMP hypothecated or encumbered its claims while it held it on their theory. AMP and Peen have already put in a representation and warranty, which is on page 39 of the record saying they didn't. That's minimal discovery, which under Lasalvia is not sufficient prejudice. Counselor, did you want to reserve any time for this? I'm going to ask you both to hold one minute. Don't go off record. Don't do anything. I have to step across the other side of the room to make something stop flashing. I'll be right back. Okay. Thank you for that delay, for accommodating it. Just one too many pieces of technology in the room. Sorry. Counsel, we're ready to hear your argument. Thank you, your honor. There are two reasons for Cabrera's standing. The first is that Cabrera keeps using training options assets as if they belong to him personally. The causes of action that belong to training options, training options, even the training options name itself, those are all intangible assets that were sold off in 2009. Not one of them belonged to Cabrera when he filed his complaint in 2018. That's why he didn't have standing in the first place. The second problem is that Cabrera tried to hide the true ownership of training options and its assets. That's how he drew the rule 37 sanctions that bring us here today. Now Cabrera has admitted that he literally ran training options as an alter ego. That's the supplemental excerpt of record at 58. Now that may explain this alter ego relationship that he claims. That may explain why he keeps saying that he's got the rights to training options assets, including the AdWords account. But Cabrera's abuse of the corporate form doesn't give him standing. The appellate says that bringing in Mr. Cabrera was just a quote unquote honest mistake. That's his brief at 21. An understandable mistake. That's his reply at 38. He argues that substituting Cabrera for the original lead plaintiff was not a strategic choice. It was just a pleading mistake. It could have been readily fixed if only Cabrera had been given a crack at a fifth amended complaint. But that narrative, your honors, doesn't fit the facts. First of all, Cabrera can't claim that his pre-pleading error was fixed. All you have to do is look at the corporate contortions, the serial ramifications, the name changes, the conflicting testimony that Cabrera churned out after the close of Discovery. As just one example, Cabrera had to keep on using the name training options. And this is what makes the case especially confusing. He kept using the name to revive his corporate shell, even though the name didn't belong to him anymore. It belonged to the going concern, also called training options, that he sold it off to. From the beginning, the decision to bring in Cabrera was a deliberate strategic choice. And this implicates the rule 17 arguments here. The original plaintiff in this case, Rick Woods, could have stayed on as lead plaintiff if only trial counsel had chosen to step aside. All they needed to do was get replacements that weren't doing business with the plaintiff, Mr. Woods. The district court rightly called the decision to bring in a new plaintiff instead of new counsel, both deliberate and tactical. Now, the choice of Cabrera also had a convenience factor. Like the departed plaintiff, Woods, Cabrera was personally known to and had a business relationship with past counsel. So, despite all counsel knew and should have known about Cabrera, Woods, the one with standing, was pushed aside. Now, and this is especially important, I think, your honors, a week before Cabrera filed his last complaint, the fourth amended complaint, we put plaintiff's counsel formally on notice that they had a standing problem. That was on, that's in excerpt of record 126 and 127. But they still filed the complaint with Cabrera instead of trying it with teaming or training options, the real training options. That was another strategic decision. The pleading error, the pleading error of naming Cabrera may have been the original sin, but here it wasn't just the crime or what they call the honest mistake, it was the cover. Counsel, can I interrupt? Because, honestly, we've read your briefs, I promise. But could you go back and tell me, if you knew then and put them on notice of a problem, opposing counsels just argued that when Cabrera was deposed that there wasn't discovery about this, about this issue. I'm not sure I understand your question. We had an opportunity to conduct discovery about, as to Cabrera's ownership of training options, right? Only, only at the very close of discovery where they kind of dribbled out the documents. I think the chronology might be helpful here, your honor, because we particularly take issue with what Mr. Joseph said about the representations here. Even before, what makes this case unusual and what makes their been suggesting rule 26, even before he filed his complaint, Cabrera kept telling the court that he produced all relevant documents and he had. In his complaints, he failed to mention the name of the business training options and he didn't disclose that he had sold training options. Wait a minute, wait a minute, but counsel, I've read your briefs, we've all read your briefs, but it seems to me to get to the nub of it. What his contention is that he did disclose everything he needed to disclose to rule, pursuant to rule 26, because he wasn't relying on these as a party to the contract to bring suit. Once you all brought your affirmative defense or brought your defense, then he's got an obligation, it seems to me, but I haven't heard you explain to me why you think there's a rule. We had quite a dissertation about rule 26 and rule 37, and I'm waiting, it would be really helpful for me to hear your response to that. Sure, your honor, Mr. Cabrera didn't produce all the relevant documents. What he produced is documents that he thought were relevant to him. It wasn't reasonable for him to think that he didn't have a standing problem. Because Cabrera himself, your honor, testified repeatedly at his deposition that he'd sold all the assets of the company, everything. He didn't qualify or carve it out. Counsel, he also, if you could, if you could engage, please, he's arguing, right, that this was his, that he was a party to the contract that set up this account, that if Google, if he'd not paid for it, Google would have come after him. He had obligations. Google had obligations. That's his argument. So given that that's his premise, why was it incumbent upon him to produce the training options documents, especially the ones that didn't exist? Well, because he told the court that he deliberately used, your honor, he tried to avoid discovery by saying we voluntarily made a production of all relevant documents. He didn't just say documents that were relevant to his narrow theory, which was an unreasonable. He said, we've given them everything and we want to produce them in 30 days. Now, what that meant was that there wouldn't be time to depose him and get responses to document requests. Now we fought that, but they were trying to push the case and they made that affirmative representation. You lost that round. The district court agreed with counsel, but you've, what you've kind of skipped over for me, which is really pivotal. You seem to think it was unreasonable for him and patently. So is it, if I understand you correctly to rely on his theory that he, as a party to the AdWords contract, he had standing. Could you please respond to that? Yes, your honor. It was unreasonable for several reasons. First of all, the AdWords account didn't belong to him as he, as he admitted, it was set up by and for training options. Wait a minute. Why do you take that position? Because we looked at those documents closely. Sorry to get granular on you, but he says he signed up himself. He used his personal email. I mean, and they continue to maintain the account and maintain control of it after training options was sold. So could you respond please? Yes, your honor. Respectfully, he didn't use his personal email. He used the training options. He used both. I've looked at the documents. They're both only, only after it was sold. The fact that he controlled the account and continued to control it doesn't mean that he had the right to do that. The training options account was an ad was a general intangible asset that should have passed through in the sale. Now, he either didn't disclose or pass it around, but the fact that he continued to exercise control doesn't mean that he had the right to do that. Your honor. You're shifting arguments. Now, if you're talking about intangible assets of the corporation, his argument is that it's, of course, as you know, it's not itemized. It's not listed in the documentation for the sale. Both parties have indicated that they did not intend to sell it. What is your response to that, please? My response, your honor, is that Florida law is clear. One of the most astonishing statements in the record is trial counsel's statement that oral argument that he didn't know in response to Judge Atlas' question, what a general intangible was. It's clearly defined under Florida law. They should have known that they had a problem. It was either willful blindness or deliberately hiding it. They falsely said in their complaint, this was one of the misleading things, why we didn't know there was an issue. They falsely said in the complaint that Cabrera bought and paid for the ads. He said exactly the opposite of this deposition. All right, Mr. Johnson. I like to follow up a little bit on Judge Christian's line of questioning, but move it over just slightly. I think you agree that the plaintiff deserves some kind of sanctions for the rule 26, which you contend are violations, right? Yes, your honor. Agree with that? Now, and the rule 37, I guess, sanctions were imposed, weren't they? Yes, your honor. If I may address that. I'm sorry. I want you to tell me exactly what you believe, what's your position that, what exactly were the rule 26 violations that the plaintiff engaged in? The plaintiff did not update his request. As Mr. Cabrera testified, his lawyers sat on the crucial sale documents for several weeks after they had made an affirmative representation to the court that they'd given us everything. They didn't. They didn't update that, your honor. And to Mr. Johnson. But when you say they sat on them for several weeks, they were ultimately disclosed, right? Now, are you saying the disclosure was too late to do any good? Some were. Yes, in some cases, your honor, the mass, what plaintiff's counsel admitted were the master sales agreement. The agreement that they had told, keep in mind, your honor, this is the APA, the master sales agreement. They told the magistrate, and this is important to Mr. Joseph's primary argument. Plaintiff's told the magistrate that the document that they couldn't find, supposedly the master sales agreement, they said it's not relevant, your honor. Plaintiff's counsel even went so far as to say, even though they claimed they hadn't seen it, they said, your honor, it's not even the operative document. And I said, your honor, no, I think we need to see it. It may show that they've sold the assets to the company. We couldn't get it. They didn't produce it until after discovery. They got it from Paine, the person that they blocked us from deposing, the person they blocked us from getting documents. They said several times in their briefing papers, it couldn't be any clearer, nothing to see here, Magistrate DeMarco. There's no relevant evidence because we know we're right. Now, it's unfair for them to assume that they're going to prevail on the very motion to bootstrap their way into limiting relevance. And they admitted that the documents, eventually they admitted the documents were relevant. They tried to, they went back to Paine and AMT to try and get the arguments to save their case. I'm still not clear on why the documents were ultimately disclosed. Now, what was your position now that disclosure was too late to do any good? If that's it, tell me why. No, your honor, the disclosure showed that they didn't have standing. The disclosure was too late for them to go back and say, oh, we've lost the motion. Let's go back and get new evidence from a source that we blocked you from. Let's go back and get new evidence. That's what the problem was. Now, Mr. Joseph talks about the sanction here as though it was something unusual. This was a standard garden variety rule 37 preclusion sanction. It's the kind that produces a party from introducing certain evidence, regardless of when that evidence was created. I'm going to quote something, your honor. Often a preclusion order is entered where a party has to make witnesses known or available for discovery in a timely fashion. That's exactly what happened here. I'm quoting right now from Mr. Joseph's own book that sanctions the federal law of litigation abuse, 6th edition, 49B2 at page 807. Judge Davila issued exactly the kind of preclusion order that takes up a whole section in Mr. Joseph's book. The sanction was triggered not because Cabrera wanted to create new evidence, but because he failed to produce, he delayed, and he obstructed access to old evidence. As the district court recognized Cabrera's trial counsel kept telling the court that they produced all the trial documents when they had them. They concealed the true nature of the sale. They misleadingly, when they were forced to finally answer discovery that they tried to avoid, they said, oh, we just sold certain assets, quote unquote. But they knew. They knew at that time that from documents that Cabrera had given them, they knew that they had sold substantially all the assets. Now, I'm pointing there to supplemental executive record at 141. That's a document they admitted they had. Cabrera's counsel waited until the close of discovery to produce documents Cabrera had given them weeks before. Then Cabrera blocked Google's efforts to get information about the sale and the missing documents by, and it's all there on the record, by saying nothing to see here. It's not just they're doing it at the last minute. Well, they're doing it at the last minute because they held on. I get a chance to ask one question, you know, just so I can look like I'm smart, okay? So you're saying that there's no other member of this class but Mr. Cabrera, and this case should be dismissed, and then we got to start all over again with a new class? Or is it because the statute of limitations is run? Is that why you want us to dismiss this case? We want you to dismiss the case because the plaintiff has no standing, your honor. And there's nobody in the class that has a standing? No, he's the only, you know, it's suspicious. There were no copycat cases here. There are no indicia of a real non-lawyer generated. It's a class action. Somebody's already decided it's a class action, right? No, your honor. No, your honor. Respectfully, no class has been certified. Okay. And you're just saying we should start all over again. Right. It's a crucial difference. Counsel, I'm going to ask you to wrap up because you're over your time. Sure. I just, thank you, your honor. I just like to, I think the court got a clear direction from the Supreme Court's ruling recently in the toll case. That's a case where the Supreme Court listened and not make it unbelievable. It's exactly the opposite of what's going on here. The Supreme Court basically said that the primary inquiry is the same inquiry the first responders have when they get to the scene of an accident. They say, was anybody here hurt? The key thing, the thing that sets this case apart, two things. One is that Mr. Cabrera can't claim an injury of beneficiaries of a defined benefit pension plan. They arguably, it's the court's opinion at 1620, they arguably had a contract right. Mr. Cabrera is also claiming a contract right. But the Supreme Court said, because they can't plausibly allege that they were actually hurt. Counsel, you're out of time. Please wrap up. Thank you, your honor. I just say the two things that distinguish it and distinguish all plaintiff's cases, no harm, and that there is substantial stonewalling throughout the record here, which creates a 26A problem. Thank you. Counsel, you've saved some time for rebuttal. Thank you, your honor. I will not go over it. First, I want to commend counsel for his reading material, but the provision that he was referring to does require an antecedent duty to disclose under rule 26A. And I still did not hear what that is. Second, counsel's now disputing whether it was a personal account of Mr. Cabrera's, which if you look at page 197 of the record, the magistrate judge ruled Google offers no reason for the court to question the evidence that Cabrera highlights showing that the Edwards account was his personal account and not an asset of the business. Again, not appeal by Google. Now counsel wants to talk about the assignment. Google contends that Cabrera assigned the claim and therefore did not have article three standing. In Sprint, the U.S. Supreme court said that a plaintiff who had the right to sue, but had to give a hundred percent of the damages to third parties had article three as simply the damages will resolve the injury, not who ultimately keeps the damages. And the sixth circuit in Crand Park had exactly the same situation that Google claims we have here. And that is the plaintiff sold the business, sold the assets and the claims before filing suit. And the sixth circuit said that whether or not there was still a claim under contract laws, a state law issue, which is a rule 17 issue, but he was a party to the contract. He's party to the dispute because that also involved breaches of duty included a contract claim. That's a state law issue. It's a rule 17 issue. It's not an article three issue and circuit judge Richard Sullivan of the second circuit sitting as a district judge in the QS hold co-case came to absolute right to litigate his claim first, his contention on standing, which the court found was reasonable and that justified his waiting until after that was refused. It didn't have to concede the defendant's position in advance. Thank you, your honors. My time is up. Thank you very much. Thank you both. Thank you both for your excellent arguments. It helped flush out a very interesting case and we appreciate it. We'll take that case under advisement and move on to the last case on the calendar today, which is Hazlett versus Walmart. That's case number 19-16628.
judges: Tashima, Christen, Bataillon